Sixth Division

FILED: 03/19/99

No. 1-97-3426

THE PEOPLE OF THE STATE OF ILLINOIS, )   Appeal from the Circuit

 )   Court of Cook County

Plaintiff-Appellee, )

)

v. )   No. 96 CR 139486

)

ANTOINE HOWARD, )   Honorable

)   John E. Morrissey,

Defendant-Appellant. )   Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Following a jury trial, defendant, Antoine Howard, was convicted of one count of armed robbery and sentenced to nine years incarceration.  Defendant has appealed his conviction and sentence, arguing that (1) the trial court improperly admitted evidence of prior crimes to establish 
modus operandi 
and (2) his sentence was excessive and predicated upon improper factors where the trial court erroneously considered his continued claim of innocence as an aggravating factor.

The State charged that defendant robbed Professor Alfred Rosenbloom on April 20, 1996, near the University of Illinois at Chicago (UIC) campus.  Prior to trial, defendant moved to exclude the testimony of Professor Steven Melamed.  The State alleged that defendant robbed Melamed near the UIC campus on April 18, 1996.  The trial court ruled that because the two robberies were sufficiently similar Melamed's testimony was admissible to establish defendant's identity through 
modus operandi.

At trial, the State's first witness was Alfred Rosenbloom.  Rosenbloom testified that he taught at Illinois Benedictine College and lived in Chicago near the UIC campus.  On April 20, 1996, he was walking near his home on Van Buren Street.  An individual, whom he identified as defendant, came up quickly behind Rosenbloom and "muscled" him around the corner.  Defendant then stood face to face with Rosenbloom, pointed a gun at him, and said, "Give me your wallet."  Rosenbloom complied.  The defendant then demanded Rosenbloom's PIN (personal identification number) number which is a special entry code for an ATM (automatic teller machine).  Rosenbloom lied and said he did not have a PIN number.  Defendant said "Don't follow me you motherf-----."  Defendant then ducked around the corner with the wallet.

Rosenbloom waited for a moment before he looked around the corner and saw defendant running west on Van Buren.  Rosenbloom ran after defendant.  Defendant turned the corner on Morgan Street.  Rosenbloom momentarily lost sight of defendant but then continued chasing him on Morgan.  Defendant turned right on Jackson and got into a red car.  Rosenbloom was able to read the license plate before the car pulled away.  Rosenbloom returned to Jackson and flagged down a police car, but the ensuing search of the area was unsuccessful.  

Two days later, Rosenbloom went to a police station and identified an automobile as the car he had seen defendant enter.  He then identified defendant in a lineup.  He also identified a number of foreign currencies which had been kept in his wallet as souvenirs from his extensive foreign travels.  

Professor Steven Melamed, a professor at UIC, testified that on April 18, 1996, he was walking near the UIC campus on Peoria Street.  He observed defendant walking towards him on the opposite side of the street.  Defendant crossed the street and put his hand in his jacket.  Defendant then approached Melamed from behind.  Melamed felt something hard pressed against the back of his head.  Defendant said, "Give me your money mother-f-----, or I'll pop you."  Defendant moved in front of Melamed and pointed a gun at him.  Melamed pulled his wallet from his pants pocket.  Melamed attempted to remove the money from his wallet, but defendant grabbed the wallet and ran.  Defendant ran first north on Peoria and then West on Van Buren.  Melamed was shown a black wallet which he testified was the same style, color and material as his wallet.

Melamed reported the robbery to the Chicago police and University of Illinois police.  On April 26, 1996, he viewed a lineup and did not identify anyone.  Defendant was not in this lineup.  On May 8, 1996, Melamed viewed "a photographic lineup" at the UIC police station and identified defendant's photograph.  Later that day, Melamed viewed a lineup and identified defendant.

On cross-examination, Melamed denied telling a police officer that he could not identify the offender in a lineup.  He also denied telling a police officer that he could not complete a computer sketch of the offender.  Melamed admitted that although he described an offender with facial hair, defendant had none when Melamed identified him.  Melamed stated that the police were "very anxious" to have him pick someone in the first lineup, but he denied that he was pressured to pick someone in the second lineup.  He also admitted that he could not identify any distinguishing marks on the wallet he had been shown earlier.

Chicago police officer Joseph Pulido was assigned to investigate the robbery of Professor Rosenbloom.  He checked the license plate number given by Rosenbloom and discovered the car was registered to defendant.  He attempted to locate defendant but found a vacant lot at the address to which the car was registered.  On April 22, 1996, Pulido received information that defendant worked for On-Cor Foods.  When he arrived at On-Cor Foods, he saw a red vehicle with the license plate number given by Rosenbloom.  He went inside, met the plant manager and asked to speak to defendant.  The manager brought defendant to the office.  After determining defendant matched the description of the robbery suspect, Pulido arrested defendant.  Defendant then asked to get his jacket from his locker, and another officer accompanied the plant manager to retrieve the jacket.  Pulido took defendant to the station, and another officer drove defendant's car.  

Officer Thomas Newton accompanied Pulido to the On-Cor plant on April 22, 1996.  He obtained a set of keys from defendant and retrieved a jacket from defendant's locker.  He gave the jacket a "pat down" for weapons before giving it to defendant.  Newton drove defendant's car to the police station where he also performed a custodial search of defendant and recovered a wallet from defendant's pants pocket which contained defendant's driver's license, other identification and miscellaneous papers.  He also recovered a black wallet which contained a variety of foreign currencies.  The second wallet did not contain any personal identification.  

The defendant called UIC police officer Philip Basak who had conducted an investigation of the robbery of Professor Melamed.  Basak admitted that according to his report Melamed said he could not complete a composite computer sketch.  However, Basak denied that his report was accurate and suggested that he may have transposed information from another report.  He also admitted the report stated Melamed was not confident he could identify the suspect, but stated the report did not coincide with his memory of his conversation.

Defendant testified on his own behalf that he did not give the police officers the keys to his locker and that the locker did not have a lock.  From time to time he lived with two male cousins, who occasionally drove his car.  He denied committing the robberies and stated he was home when the robberies were committed.

The defendant also called Jeffery Booker.  Booker testified that he owned the apartment building in which defendant lived in 1996.  Defendant occasionally had male relatives his age staying with him.  Booker had seen defendant's roommates driving defendant's car.  On cross-examination, Booker testified he did not live in the apartment building after January 1996.  In April 1996 he did not see anyone living with defendant, and never saw anyone driving his car.

The jury convicted defendant of the armed robbery of Rosenbloom, and the trial court sentenced defendant to nine years' incarceration.  Defendant's oral motion to reduce the sentence was denied.

Defendant argues that the trial court improperly admitted the testimony of Professor Melamed because it constituted evidence of other crimes which should have been excluded as irrelevant and prejudicial.

The determination of admissibility of evidence is a matter within the sound discretion of the trial court and will not be overturned on appeal unless it is an abuse of discretion.  
People v. Illgen, 
145 Ill. 2d 353, 364 (1991).  A trial court's determination constitutes an abuse of discretion if it is arbitrary, fanciful or unreasonable, or if no reasonable person would take the view adopted by the trial court.  
Illgen, 
145 Ill. 2d at 364.

Evidence of other crimes is inadmissible to prove the defendant's propensity to commit crime.  
People v. Kimbrough, 
138 Ill. App. 3d 481, 484 (1985).  However, evidence of other crimes is admissible to demonstrate anything other than a propensity to commit crime, including, for example, intent, identity, 
modus operandi, 
and absence of mistake.  
Kimbrough, 
138 Ill. App. 3d at 484-85.  Similarity between the crimes is a threshold issue that protects the defendant from the use of other crimes evidence solely to prove propensity.  
People v. Bartall, 
98 Ill. 2d 294, 310 (1983).  Evidence of other crimes should be limited to evidence which is relevant to the purpose for which it is admitted.  
People v. Bennett, 
281 Ill. App. 3d 814, 827 (1996) (excluding evidence of injury to witness when the injury was not relevant to establish 
modus operandi).  
Moreover, the trial court should exercise its discretion and exclude evidence of other crimes when the probative value is substantially outweighed by the prejudicial effects.  
Illgen, 
145 Ill. 2d at 375.

Modus operandi 
or method of operation evidence can be used to establish identity when such evidence 
is 
sufficiently distinctive to earmark the crime as the work of the defendant.  
People v. Kokoraleis, 
132 Ill. 2d 235, 257 (1989); 
People v. Tate, 
87 Ill. 2d 134, 143 (1981).  Probative value in a 
modus operandi 
case is dependent on a substantial meaningful link between the crimes.  
Tate, 
87 Ill. 2d at 143.  This link requires a "high degree of similarity," but some dissimilarity between independent crimes will always be present.  
People v. Cruz, 
162 Ill. 2d 314, 349 (1994).  The use of 
modus operandi 
evidence is especially proper when the defendant's identity is a central issue in the case.  
People v. Miller, 
254 Ill. App. 3d 997, 1012 (1993).

Here, defendant's identity was the central issue.  Although the foreign currencies recovered from defendant were a strong link to the robbery, defendant argued that this was a case of mistaken identity.  Defendant argued that the currencies had actually been recovered from his car, other people used his car, the lineup was suggestive and someone else had committed the robberies.  Melamed's testimony was used to shore up Rosenbloom's strong identification.

The State argues that evidence of the Melamed robbery was properly admitted because the crimes were sufficiently similar and identifies a number of similarities including: 1) choice of victim, both were white male college professors; 2) location, both crimes occurred next the UIC campus near Van Buren Street; 3) offender's conduct during the robbery, each professor was approached from behind by an assailant who used the same expletive.  We disagree.

Both victims were white male college professors and both were robbed near the UIC campus, however, these coincidences alone were insufficient to establish 
modus operandi.  
The State presented no evidence that the victims were targeted because of their occupation, and there was no evidence that the offender inquired as to the victims’ profession.  Although Melamed was robbed shortly after he finished teaching a class, the State presented no evidence he was followed from the classroom, or that the robber knew his schedule.  Furthermore, Rosenbloom did not teach at UIC and was robbed after leaving his car with a mechanic.  No evidence was presented that defendant knew his profession.  Both victims were white males, but this is hardly a unique feature of the crime that earmarks it as the work of a single offender.  Similarly, there is nothing unique about the location in which the crime occurred.  Van Buren is a busy thoroughfare and it is not improbable that two robberies would occur within days of one another near that street.  The location and choice of victim in this case does not sufficiently to earmark these crimes as the handiwork of one individual.  See 
Kokoraleis, 
132 Ill. 3d at 257; but 
cf. People v. Robinson, 
167 Ill. 2d 53, 65-66 (1995) (holding other crimes evidence was properly admitted to establish 
modus operandi 
when the defendant attacked older women as they exited their garages in the same area of Chicago).

The similarities the State identifies between the offender's conduct in the two robberies do not earmark the crimes.  In each case, the victim was initially approached from behind.  This is not particularly distinctive because armed robbers often attempt to surprise their victims.  In each case, the offender displayed a weapon and demanded the victim's wallet.  This is not a unique earmark but rather describes the prototypical armed robbery.  Although the same epithet was used to address each victim, the profanity used is common and does not distinctively earmark these crimes.  Because these similarities represent only features which are common in many robberies, they are not distinctive enough to earmark them as the work of single individual.  Furthermore, only one of the victims was asked for his PIN number, and in only one instance did the offender use a vehicle to effectuate his escape.  Accordingly, the evidence in the record did not support the admission of the testimony of Professor Melamed as 
modus operandi.  
See 
Tate, 
87 Ill. 2d at 142-43.  

Moreover, Melamed's testimony should have been excluded because its probative value was outweighed by the potential for prejudice.  See 
Illgen, 
145 Ill. 2d at 375.  The probative value of Melamed's testimony was reduced because of the strength of the case against defendant.  The police were able to locate defendant by tracing the license plate Rosenbloom observed.  Rosenbloom identified the defendant and his vehicle.  Defendant was further linked to the crime by the unique collection of foreign currency found in his possession.  The strength of this evidence eliminated the need for Melamed's testimony identifying defendant and increased the likelihood that the jury improperly based its verdict on defendant's propensity to commit crime.  
Cf. People v. Barbour, 
106 Ill. App. 3d 993, 1000 (1982) (holding evidence of other crimes inadmissible when identity is not at issue).

The State argues that admission of Melamed's testimony, if error, was harmless.  See 
People v. Miller, 
254 Ill. App. 3d 997, 1014 (1993) citing 
People v. Richardson, 
123 Ill. 2d 322, 343 (1988).  
Richardson, 
held that when there is no "extensive discussion" of collateral crimes and positive identification of the defendant the erroneous admission was harmless.  However, erroneously admitted other crimes evidence carries a high risk of prejudice and ordinarily calls for reversal.  
People v. Lindgren, 
79 Ill. 2d 129, 140 (1980).  Here, the State presented a detailed account of the Melamed robbery.  Further, the possibility of prejudice was greater because defendant argued mistaken identity and attempted to provide an innocent explanation for the physical evidence linking him to the crime.  The effect of this evidence deprived defendant of the right to a fair trial, and the error was not harmless.

We hold that the trial court committed reversible error by admitting evidence of the prior robbery because it was not sufficiently distinctive to earmark the crime as the work of a single person.  Further, this evidence was highly prejudicial and of such limited probative value that it should have been excluded.  Thus, its admission requires that defendant be afforded a new trial.

Upon careful review of the record in this case, we find that the remaining evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.  Therefore, we may remand this cause for a new trial without subjecting defendant to double jeopardy.  See 
People v. Taylor, 
76 Ill. 2d 289, 309 (1979).

In light of our disposition, we need not address defendant’s claim that he was improperly sentenced.

For the foregoing reasons the judgment of the circuit court of Cook County is reversed, and the cause remanded for a new trial.

Reversed and remanded.

CAMPBELL, P.J., concurs.

JUSTICE QUINN dissenting:

The majority holds that the trial court's decision to admit the evidence of the Melamed armed robbery was an abuse of discretion.  In doing so, the majority have found that the trial court's decision was "arbitrary, fanciful or unreasonable, or (that) no reasonable person would take the view adopted by the trial court."  
People v. Ilgen, 
145 Ill. 2d at 364.

The trial court's decision was not an abuse of discretion, it was correct.  As the majority points out, in 
People v. Robinson, 
167 Ill. 25, 53 (1995) our supreme court held that proof of other crimes may be properly admitted to establish 
modus operandi 
to bolster the States' proof of identity.  As noted in the 
Robinson 
opinion, the similarities between the case being tried and the two cases used to show 
modus operandi, 
were as follows:

That case on trial involved an attack on 56-year-old Lily Barber which occurred on March 16, 1990 in the Chatham neighborhood.  As Barber exited her car in her garage she was confronted by a man wearing a mask.  A struggle ensued during which Barber pulled off the mask and the man displayed a knife and took her wallet. The man forced her to lie on the ground and pull down her pants and threatened to have sex with her.  
Robinson, 
at 59.

In the first case admitted to show 
modus operandi, 
Elouise Law testified that on March 23, 1990 as she exited her garage in the Chatham area, someone hit her, knocking her down.  The assailant grabbed her purse, and ran away.  Law testified that she could not identify her assailant.  Her credit cards were recovered from a woman who testified that she had gotten them from Robinson.  
Robinson 
at 60-61.

In the second case admitted to show 
modus operandi, 
Louise Collins testified that in 
1977 
she was approached by a man with a knife in the vestibule of her building in the Chatham neighborhood.  The man took her purse, forced her to remove her clothing and get on the floor.  Collins then described how she escaped by stabbing the man with his own knife.  Collins also testified that she identified the defendant as her attacker during a lineup that took place on January 20, 1978.  Collins identified defendant as her attacker in open court during the trial of defendant for the armed robbery of Lily Barber.  
Robinson, 
at 61.

Defendant was incarcerated for all but two years between the attack on Collins and the armed robbery of Barber.

The facts presented by the armed robberies of Rosenbloom and Melamed in the current case are much more similar than those in the 
Robinson 
case.  The armed robberies were two days apart, during the afternoon or early evening.  They took place within one block of each other (one at Sangamon and Van Buren and one on Peoria at Van Buren).  In both cases, the offender approached the middle-aged white male victim from behind, the offender got in front of the victim, displayed a handgun, used the same expletive when demanding the victim's wallet and took the whole wallet rather than just the currency.  In both cases the offender fled westbound on Van Buren and then northbound from the scene.  Defendant was identified by both Rosenbloom and Melamed in lineups and in open court as the offender.

The majority asserts that "the probative value of Melamed's testimony was reduced because of the strength of the case against defendant."  Curiously, the majority also asserts "the possibility of prejudice was greater because defendant argued mistaken identity and attempted to provide an innocent explanation for the physical evidence linking him to the crime."

Defendant's counsel asserted in her opening argument that defendant had roommates and the jury would hear testimony concerning them.  During the defense case, defendant and his landlord both testified that defendant occasionally had roommates who fit defendant's general description and who had access to defendant's car.  Defense counsel argued that the foreign currency taken during the armed robbery of Rosenbloom was actually recovered from defendant's car, not from defendant.  During closing argument, defense counsel argued that, since defendant's roommates had access to the car described by Rosenbloom, one of them must have committed the armed robbery.

The evidence of the armed robbery of Melamed was properly used to rebut this evidence and the inferences arising from it.  In 
People v. Tellez, 
235 Ill. App. 3d 542 (1992), this court held that a trial court may allow proof of other crimes evidence in the State's case-in-chief to rebut evidence that the trial court is aware the defense intends to use.  
People v. Tellez, 
235 Ill. App. 3d at 554-55.

As was true in the 
Robinson 
and 
Tellez 
cases, the trial court here allowed the State to present the proof of other crimes only after the parties briefed and argued the issue.  In announcing its finding, the trial court cited our supreme court's holdings in 
People v. Ronald Jones, 
156 Ill. 2d 225 (1993), and 
People v. Kokoraleis, 
132 Ill. 2d 235 (1989) both of which dealt with 
modus operandi 
evidence.  As already pointed out, the facts of the two incidents admitted in the case 
sub judice 
were much more similar than those in 
People v. Robinson, 
167 Ill. 2d 25 (1995).

I believe that the majority's holding in this case is symptomatic of a serious problem resulting from inconsistent appellate decisions addressing the issue of the admissibility of other crimes evidence.  The reviewing court correctly states that the determination of admissibility of evidence is a matter within the sound discretion of the trial court and will not be overturned on appeal unless it is an abuse of discretion, citing 
People v. Ilgen, 
145 Ill. 2d. 353, 364 (1991).  However, the reviewing court then reverses the trial court because they would have come to a different conclusion as to the admissibility of the evidence.  This occurs so frequently that I believe that our courts of review have failed to provide any reasonable guidance on this issue to the trial courts.  The majority's holding demonstrates that when the trial courts of this state allow proof of other crimes in any case for any reason, they do so at their peril.