# Illinois Official Reports

## Appellate Court

---

**Garcia v. Goetz, 2018 IL App (1st) 172204**

---

| | |
|---|---|
| Appellate Court Caption | LAZARO GARCIA, Plaintiff-Appellant, v. LAURA GOETZ and DAWN BRISKEY, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-17-2204 |
| Filed | June 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-12425; the Hon. Larry G. Axelrood, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gary M. Feiereisel and Rachel S. Wayne, of Feiereisel & Kasbohm, LLC, of Chicago, for appellant.<br><br>Esther Joy Schwartz, John W. Gilligan III, and Adam C. Motz, of Schwartz Gilligan, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Griffin concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff Lazaro Garcia fell down a flight of stairs while on a service call to fix a boiler that belonged to defendants Laura Goetz and Dawn Briskey. He filed a one-count complaint against them. A jury found in favor of defendants and against Mr. Garcia. On appeal, Mr. Garcia argues that the trial court erred by (1) instructing the jury, over his objection, on a theory of premises liability rather than ordinary negligence, (2) barring testimony or evidence that defendants removed and remodeled the stairs on which Mr. Garcia fell and rejecting Mr. Garcia's tendered instructions on missing evidence about those alterations, and (3) not barring all evidence of defendants' home inspection report from the time they purchased the house, almost 10 years before the accident occurred. For the following reasons, we affirm.

¶ 2                                             I. BACKGROUND

¶ 3        On December 1, 2014, Mr. Garcia filed his complaint, in which he alleged a single, unlabeled claim. Mr. Garcia alleged that defendants owned the single-family residence located at 5318 North Melvina Avenue in Chicago, Illinois; that he was at defendants' residence on October 8, 2014, "for the purpose of servicing their heating system"; and that he "was present at the invitation of Defendants to perform that task." Mr. Garcia alleged that, as a result of one or more acts or omissions of defendants, he fell while descending the basement stairway and was injured. After setting out the background facts, Mr. Garcia alleged:

> "5. At said time and place, Defendants had a duty to exercise ordinary care and caution in the ownership, control and maintenance of their premises [s]o as to not cause harm to people invited on their premises, including the plaintiff herein.
>
> 6. Disregarding that duty at said time and place defendants were guilty of one or more of the following negligent acts and/or omissions:
>
> a. Failed to properly maintain the stairs leading from the first floor into the basement such that when plaintiff was walking down the stairs to service the defendants' heating system he was caused to fall and be injured;
>
> b. Allowed wood or other items to accumulate at the bottom of the stairs in question causing an unreasonable and unnecessary danger to invited individuals, including the plaintiff herein, who were descending the stairs;
>
> c. Failed to maintain the stairs in the premises in question leading from the first floor to the basement in such a way that the stairs were reasonably safe for invited individuals, like the plaintiff herein, to descend when invited to do so;
>
> d. Failed to warn plaintiff of the dangerous condition of the stairs in question;
>
> e. Was otherwise careless and negligent in their control and maintenance of the stairs in question such that plaintiff was caused to fall and be injured."

¶ 4        Defendants filed an answer on January 12, 2015, in which they generally denied having committed any negligent acts or omissions that caused Mr. Garcia's fall and injury.

¶ 5        The parties filed multiple motions *in limine* before trial. Mr. Garcia sought to bar any statements or questions pertaining to an inspection report dated December 28, 2004, detailing the findings of an inspector defendants hired when they bought their house. Defendants sought to bar evidence about Mr. Garcia's inability to access defendants' home to inspect and photograph the stairs and evidence that defendants had removed and replaced the basement

stairway after the accident, on the basis that this evidence was inadmissible as evidence of a subsequent remedial measure.

¶ 6    The trial court denied Mr. Garcia's motion in part, ruling that defendants would be permitted to testify that they went through the "normal processes" when they purchased their home, "including a home inspection, and that they were not given any information that they were not in compliance." The court granted defendants' motions, agreeing that the removal and replacement of the stairs was a subsequent remedial action, and barring any evidence that Mr. Garcia was unable to inspect the basement stairway before it was removed. The court noted both that the parties had stipulated that a photograph of the stairway taken by defendants' insurance company a few days after the accident was "a true and accurate depiction of the stairs at the time of th[e] event," and that both sides' experts were only able to inspect the premises after the remedial work was done. The court ruled that, "unless somebody opens the door, there will be nothing further other than they [the experts] relied on the photographs and the subsequent inspection to come up with their opinions."

¶ 7    The jury trial began on March 28, 2017. Mr. Garcia testified that, before October 2014, he had worked at defendants' home on 14 occasions and had used the basement stairway each time, sometimes multiple times per visit. A photograph of the stairway, taken from just above the last rectangular step, shows the stairway as it existed on the day of the accident and is included in the record on appeal. The basement stairway had eight steps with rectangular treads and then the four bottom steps had "winder," or wedge-shaped treads—which made a 90-degree turn to the right, going down into the basement. The handrail ended after the second winder step, so the final two winder steps at the bottom of the stairway did not have a handrail. At the bottom of the stairway, on the last stair, was a vertical pipe.

¶ 8    Mr. Garcia explained that, on October 8, 2014, as he followed Ms. Briskey down the basement stairway, he was holding a small wet-vacuum and had a shoulder-strap bag containing some of his tools over his shoulder. He was not holding a bucket and stated that he never kept his tools in a bucket. Mr. Garcia testified that the lighting on the stairs was "[l]ike always, dim." Mr. Garcia testified that he was holding onto the handrail on his left. When he reached the point where the handrail ended, on the winding portion of the stairs, he saw items on the floor at the bottom of the stairway: "a table, like a type of dresser," and "a pile of wood" between the table and the stairs. Mr. Garcia moved to the right "to avoid what was there," then his right foot "got caught," his "right knee landed on the floor, and [his] other knee landed on top of the wood," his "shoulder hit the pipe," and his arm hit the wall. Mr. Garcia's back was to the handrail at the time he fell. He was in terrible pain after he fell and, after a short delay, was taken to the hospital.

¶ 9    Mr. Garcia's architectural expert, Matthew Filippini, testified that he reviewed multiple depositions and the exhibits accompanying the depositions, completed a site inspection, reviewed a series of photographs of the stairs, and reviewed the Chicago Building Code (Building Code or Code) to prepare for trial. Mr. Filippini explained that under the Building Code, the basement stairway would be considered a "vertical exit" and testified that the Code is "very strict about exits." Mr. Filippini testified that the Building Code requires all existing buildings to comply with "minimum requirements of the exit portion of the main Code." So even though defendants owned an older home, the main portion of the Building Code still applied.

¶ 10    Mr. Filippini explained that he conducted his measurements using a photograph of the stairway. He concluded that none of the four winders complied with the Building Code because they were at "too sharp an angle" or "too skinny." Mr. Filippini testified that this sort of measurement mattered because when a stair tread is too narrow, it is more likely that when someone puts their foot down on the stair, it will "slide off the nosing ([the front edge of the tread]) because [they are] not getting a full plant of [their] foot."

¶ 11    Mr. Filippini testified that defendants' basement handrail was also not up to code because such a narrow stairway requires a continuous handrail throughout. Defendants' handrail stopped at the second winder and did not continue around the corner, "so somebody traversing the winders runs out of handrail. There is nothing for them to use to guide them, to support them, or to grab onto if they are starting to fall."

¶ 12    Dawn Briskey testified, as an adverse witness, that she and Laura Goetz had purchased their home 12 years before the trial and that she had no idea whether the basement stairs and handrail complied with the Building Code. Ms. Briskey testified that in 2014 she made mosaics using reclaimed items and she would sometimes store the collected items in the basement. Everything in the basement at that time was owned and placed in the basement by either Ms. Briskey or Ms. Goetz. Ms. Briskey stated that she regularly used the basement stairway, generally would use the handrail when going down, and would also grab the pole at the bottom of the stairway because there was no handrail at that location. Ms. Briskey testified that she was never notified or aware that the basement stairway was in a dangerous condition. She used that stairway "at least once a day" and had never fallen.

¶ 13    Ms. Briskey testified that, on October 8, 2014, Mr. Garcia was carrying the wet-vacuum in his right hand and a five-gallon bucket in his left hand. She did not agree that he had a shoulder bag or tool bag over his left shoulder. Because he was behind her as they went down the basement stairway, she was already in the basement with her back to the stairs when she heard Mr. Garcia yell out or scream. Ms. Briskey turned around and saw Mr. Garcia "falling around the curve of the stairs." She did not believe Mr. Garcia was on the second winder when he fell, she believed he was higher than that because she "saw his left foot coming off of a straight stair right where the railing ends." Ms. Briskey did not agree with Mr. Garcia that there was a table and a pile of wood at the bottom of the stairs. Ms. Briskey agreed, however, that if those items were where Mr. Garcia said they were, they would have created an obstruction at the bottom of the stairs. Ms. Briskey did not know what caused Mr. Garcia to fall.

¶ 14    The trial court denied defendants' motion for a directed finding.

¶ 15    At the jury instruction conference, which was held at the close of Mr. Garcia's case, the parties argued over whether the trial court should instruct the jury as to negligence or premises liability. Counsel for Mr. Garcia proffered an instruction modeled after Illinois Pattern Jury Instructions, Civil, No. 20.01 (2011) (hereinafter IPI Civil No. 20.01 (2011)), an instruction for ordinary negligence, while defense counsel proffered an instruction modeled after IPI Civil No. 120.09 (2011), for premises liability.

¶ 16    Counsel for Mr. Garcia argued that he had pled a "straight negligence case, alleged allegations of negligence," and that "the first time anything about this case being a premises liability case came up was yesterday when we first started going over instructions." Mr. Garcia's counsel argued that if the court instructed the jury as to premises liability, Mr. Garcia would be prejudiced because he had litigated the case as a negligence case "since the beginning." In response, defense counsel argued that Mr. Garcia had not presented the case as

- 4 -

one strictly based on ordinary negligence and had put on an expert witness whose testimony related only to elements of premises liability based on violations of the Building Code. Defense counsel also argued that providing an instruction on ordinary negligence rather than premises liability would mislead the jury, as such an instruction would not "fully and accurately" state the law.

¶ 17    The trial court agreed with defendants that a premises liability instruction was appropriate, noting that Mr. Garcia had not "elected between one [theory] or the other" but instead had "incorporated both."

¶ 18    Counsel for Mr. Garcia also offered three "missing evidence" instructions: IPI Civil No. 5.01 (2011) and two non-IPI instructions. The court sustained defendants' objection to all three instructions.

¶ 19    In defendants' case, Laura Goetz testified that defendants had not made any changes to the basement stairway since they had moved in. Ms. Goetz testified that she was involved in the home-buying process, and that she and Ms. Briskey had hired a home inspector to do an inspection at that time. She was never informed at any point that the stairway was in an unsafe condition. She had never fallen and was not aware of anyone else ever having fallen down the basement stairway. Ms. Goetz also testified that she did not believe there were any piles of wood in the basement in October 2014. She agreed that she would "[s]ometimes" use the pole at the bottom of the stairs when she was going down into the basement.

¶ 20    Defendants' architectural expert, Greg Wisniewski, testified that, in preparation for trial, he reviewed the depositions, photographs, and an inspection report, and completed his own inspection of the area where the accident took place. He also reviewed Mr. Filippini's report. Mr. Wisniewski testified that Mr. Filippini was improperly "mixing portions of the [C]ode you don't mix." Mr. Wisniewski explained that Mr. Filippini had based his opinion on the chapter that only applied to new construction. But because defendants' home was an existing structure, "the existing building provisions of the [C]ode and its existing building minimum standards," rather than the new or altered construction section of the Code, should apply. In Mr. Wisniewski's opinion, defendants' basement stairway was in compliance with the Building Code. Mr. Wisniewski also stated that he believed defendants' stairway was "a safe stair. It doesn't meet all the new [C]ode in all aspects, but it doesn't have to. It's an existing building."

¶ 21    The jury returned a verdict in favor of defendants and against Mr. Garcia, and the trial court denied Mr. Garcia's post-trial motion.

## II. JURISDICTION

¶ 23    The trial court denied Mr. Garcia's posttrial motion on August 2, 2017. Mr. Garcia timely filed his notice of appeal on August 29, 2017. This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. Jan. 1, 2015), governing appeals from final judgments entered by the circuit court in civil cases.

## III. ANALYSIS

¶ 25    Mr. Garcia contends on appeal that the trial court erred by (1) instructing the jury on premises liability rather than ordinary negligence, (2) granting defendants' motion *in limine* to bar evidence that the stairs were removed and that he could not inspect them and also rejecting Mr. Garcia's tendered IPI and alternative non-IPI instructions on missing evidence, and

(3) partially denying his motion *in limine* barring evidence of the home inspection report. We consider each argument in turn.

¶ 26                               A. Premises Liability Jury Instruction

¶ 27    Mr. Garcia first argues that the trial court's failure to instruct the jury on ordinary negligence instead of premises liability was reversible error.

¶ 28    "Generally speaking, litigants have the right to have the jury instructed on each theory supported by the evidence." *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). But a trial court does not need to give an instruction "concerning issues not raised by the pleadings." *Blackburn v. Johnson*, 187 Ill. App. 3d 557, 564 (1989). The determination of which issues are raised by the evidence and pleadings and which jury instructions are warranted is within the discretion of the trial court. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 549 (2008). "An abuse of discretion standard requires this court to determine whether the instructions, taken as a whole, are sufficiently clear so as not to mislead the jury and whether they fairly and correctly state the law." *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 45. A reviewing court "will not disturb the trial court's determination unless the trial court has abused its discretion, and a new trial will be granted only when the refusal to give a tendered instruction results in serious prejudice to a party's right to a fair trial." *Heastie*, 226 Ill. 2d at 543.

¶ 29    At the jury instruction conference in this case, counsel for Mr. Garcia proffered the following general negligence instruction, modeled after IPI Civil No. 20.01 (2011):

"The plaintiff claims that he was injured and sustained damage, and that the defendants were negligent in one or more of the following respects:

[D]efendants failed to properly maintain the stairs leading from the first floor into the basement such that when plaintiff was walking down the stairs to service the defendants' heating system he was caused to fall and be injured;

[D]efendants maintained a staircase which failed to have a continuous handrail from the top to the bottom of the staircase causing an unreasonable and unnecessary danger to people, including plaintiff, who were descending the stairs;

[D]efendants allowed wood or other items to accumulate at the bottom of the stairs in question causing an unreasonable and unnecessary danger to people, including plaintiff, who were descending the stairs; and/or

[D]efendants failed to act as *** reasonably responsible property owners by not maintaining their premises in a safe condition.

The plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries."

¶ 30    The premises liability instruction proposed by defendants and ultimately given to the jury was modeled after IPI Civil No. 120.09 (2011) and read as follows:

"Plaintiff seeks to recover damages from the defendants. In order to recover damages, the plaintiff has the burden of proving:

First, there was a condition on the property which presented an unreasonable risk of harm to people on the property.

Second, the defendants knew or in the exercise of ordinary care should have known of both the condition and the risk.

Third, the defendants could reasonably expect that a reasonable person in plaintiff's position, knowing of the condition, would proceed to encounter it because the advantage of doing so outweighs the apparent risk.

Fourth, the defendants were negligent in one or more of the following ways:

a) defendants failed to properly maintain the stairs leading from the first floor into the basement by having winders that were unreasonably dangerous;

b) defendants maintained a staircase which failed to have a continuous handrail from the top to the bottom of the staircase; or

c) defendants allowed wood or other items to accumulate at the bottom of the stairs in question.

Fifth, the plaintiff was injured.

Sixth, the defendants' negligence was a proximate cause of the plaintiff's injury.

If you find from your consideration of all of the evidence that any of these propositions has not been proved, then your verdict shall be for the defendants. On the other hand, if you find from your consideration of all the evidence that each of these propositions has been proved, then you must consider the defendants' claim that the plaintiff was contributorily negligent."

¶ 31 As the competing instructions reflect, ordinary negligence requires proof of only three elements—the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 89. Premises liability requires proof of those three things plus three additional elements—that there was a *condition* on the property that presented an unreasonable risk of harm, that the defendant knew or reasonably should have known of the condition and the risk, and that the defendant could reasonably have expected people on the property would not realize, would not discover, or would fail to protect themselves from the danger. *Hope v. Hope*, 398 Ill. App. 3d 216, 219 (2010). If it is a landowner's conduct or activity—as opposed to a dangerous condition on the property—that creates the injury-causing hazard, the claim is one of negligence, rather than premises liability. See *Smart*, 2013 IL App (1st) 120901, ¶¶ 54-57 (finding that a negligence instruction was proper where it was the defendant city's conduct that created the hazardous condition).

¶ 32 Mr. Garcia argues that his single-count complaint, which was never amended, sounded in negligence because he alleged "that he was caused to fall, in part, because he stepped on the narrower portion of the stairs to avoid the wood or other items/debris which defendants placed at the bottom of the interior stairs" and that, therefore, the court should have granted his request to instruct the jury on only ordinary negligence. Defendants argue that Mr. Garcia's allegations instead fell within the realm of premises liability because they focused on "the safety of the staircase, the hand railing, building code violations, and the size of the stairs—all *conditions* of the property, and not *actions*" (emphases in original) by defendants.

¶ 33 We find that the trial court did not commit reversible error by only instructing the jury on premises liability in this case. Mr. Garcia insists his complaint "sound[ed] in negligence." But the most that can be said of the allegations in his unlabeled, single-count complaint is that they potentially sound in both negligence and premises liability. While some of his allegations could support a claim of ordinary negligence—particularly his allegation that defendants accumulated debris at the bottom of the stairs—most of the allegations support the elements of

- 7 -

a claim for premises liability. His claims, for example, that defendants failed to maintain the stairs in a safe manner, that they failed to warn Mr. Garcia of the dangerous condition of the stairs, and that the stairs violated the building code all go to premises liability, rather than negligence. And at trial, counsel for Mr. Garcia presented evidence from an architectural expert about the condition of the stairs, opining that the basement stairway violated certain provisions of the Building Code. In fact, a large portion of the trial consisted of each side's expert testifying about the condition of the stairway.

¶ 34    Arguably, the best practice in this case would have been for the trial court to instruct the jury on both ordinary negligence and premises liability. *Cf. Baker v. Costco Wholesale Corp.*, 2016 IL App (1st) 152736-U, ¶¶ 41-45 (an unpublished Rule 23 order in which this court affirmed a verdict where the jury was instructed on both ordinary negligence and premises liability). But neither party requested that the court present both instructions, and the majority of the trial evidence supported a theory of premises liability.

¶ 35    Indeed, plaintiff does not argue, even on appeal, that the trial court should have given both instructions, so such an argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("[p]oints not argued are forfeited"). But even if the trial court should have given both instructions, Mr. Garcia would not be entitled to a new trial because he cannot show prejudice.

¶ 36    The part of the case that was arguably a negligence case was that defendants had placed a pile of wood and debris at the base of the basement stairway. Defendants denied that such a pile was present. The argument that Mr. Garcia makes as to prejudice goes to notice. He argues that the jury should not have been instructed that he had to present evidence that defendants were on notice of the pile of debris. However, even if the jury incorrectly believed that Mr. Garcia was required to show that defendants had such notice, that cannot possibly explain the verdict in defendants' favor. At trial, Ms. Briskey testified that if there was a pile of wood and debris at the bottom of the stairway, then either she or Ms. Goetz would have placed it there. Defendants' notice of any debris or wood that was piled at the bottom of the stairs was simply not at issue.

¶ 37    This lack of prejudice is precisely what distinguishes this case from *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712 (1998), relied upon by Mr. Garcia. In that case the plaintiffs demonstrated that they were prejudiced by an instruction on premises liability, which required them to prove that Wal-Mart had notice of a board placed in the plaintiff's pathway, where it was possible that the jury could have concluded that a Wal-Mart employee inadvertently dropped the board without having actual notice or that the board was not there long enough to charge Wal-Mart with constructive notice. *Id.* at 718. Here, in contrast, Ms. Briskey acknowledged that any debris at the base of the stairway would have been placed there either by her or by Ms. Goetz. The trial court did not commit reversible error by giving the jury instruction solely related to premises liability.

¶ 38                    B. Evidence of Defendants' Removal and Replacement of the Stairway

¶ 39    Mr. Garcia next argues that the trial court erred in granting defendants' motion *in limine* to bar evidence of their removal and replacement of the basement stairway at issue in this case. Mr. Garcia also argues that the trial court erred by not giving the jury one of the instructions on missing evidence that he requested.

¶ 40    It is undisputed that neither Mr. Garcia nor his expert witness was able to inspect the basement stairway as it existed on October 8, 2014. However, defendants' insurance company

- 8 -

took photographs of the stairway immediately after the accident. Beginning in January 2015, defendants removed and replaced the stairway as part of a remodeling project. The record includes copies of several letters between the parties' attorneys about Mr. Garcia inspecting the stairway. On November 14, 2014, counsel for Mr. Garcia faxed a letter to defendants' insurance company, indicating that he intended to file a lawsuit in "the very near future" and requesting to "make arrangements to access your insureds' premises for the purpose of inspecting and photographing the stairs on which this incident occurred."

¶ 41     In a second letter, sent to defense counsel on January 12, 2015, counsel for Mr. Garcia stated that "at least until the inspection occurs, I would request that no changes, alterations, or modifications to the condition of the stairs where this incident occurred or the surrounding areas be made." Defense counsel responded on January 16, 2015, and said that he was going to contact defendants to arrange an inspection. On January 19, 2015, defense counsel sent another letter to counsel for Mr. Garcia, explaining that Ms. Goetz had informed him on January 16 that "the area at issue ha[d] been deconstructed and construction work performed upon it."

¶ 42     In her deposition, Ms. Briskey testified that in the summer of 2014, defendants had seepage in their basement, so they "had [water] companies out and they advised [defendants to] remove all of the drywall [and] completely empty the basement, so [they] could see where the seepage was coming from." Ms. Briskey testified that the work was scheduled to begin in November 2014 but was postponed due to her medical issues and did not actually begin until January 2015. She explained that, along with the walls, the basement stairs had to be completely removed and redone. Ms. Briskey contacted her attorney's office in December 2014 "to indicate [defendants] were going to begin work and wanted to make sure it was fine to proceed with the work that had already been planned." According to Ms. Briskey, whoever answered the phone said she would be back in touch but "[n]obody got back in touch" with defendants. Mr. Garcia argues that the trial court should have allowed evidence regarding this to let the jury decide if defendants had destroyed evidence and also to explain why his expert was forced to testify from photographs instead of from an in-person inspection of the stairway.

¶ 43     Mr. Garcia contends that we should review this claim of error *de novo*, and not for an abuse of discretion, because the court relied on an erroneous conclusion of law when it ruled that testimony as to defendants' removal and replacement of the basement stairway was properly barred as improper evidence of a subsequent remedial measure. See *Beehn v. Eppard*, 321 Ill. App. 3d 677, 680-81 (2001) (noting that, generally, a trial court's ruling on a motion *in limine* will not be disturbed on review absent an abuse of discretion, but that when a court's exercise of discretion relies on an erroneous conclusion of law, review is *de novo*). Mr. Garcia points out that Ms. Briskey testified in her deposition that defendants removed and replaced the stairs as part of a larger remodeling project in the basement due to water damage, for cosmetic reasons only. According to Mr. Garcia, because defendants deny that the stairs were dangerous or that the changes were made to remedy a dangerous condition, the remodel cannot be considered a subsequent remedial measure.

¶ 44     But Black's Law Dictionary (10th ed. 2014) defines a "subsequent remedial measure" simply as "[a]n action taken after an event, which, if taken before the event, would have reduced the likelihood of the event's occurrence." This definition does not suggest that a subsequent remedial measure exists only when it is taken solely to remedy some unsafe condition. Defendants' removal and replacement of the stairs here clearly fit within this definition, and Mr. Garcia offers no different one. As defendants point out, the law does not

require them to acknowledge that they removed the stairs specifically to address safety issues in order to benefit from the general ban on evidence of post-remedial measures as proof of negligence.

¶ 45    Reasons for this general ban include that (1) "a strong public policy favors encouraging improvements to enhance public safety," (2) "subsequent remedial measures are not considered sufficiently probative of prior negligence, because later carefulness may be an attempt to exercise the highest standard care," and (3) "a jury may view such conduct as an admission of negligence." *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300 (1995). The trial court did not err, as a matter of law, in concluding that defendants' removal and replacement of the stairs was a subsequent remedial measure. We review the trial court's ruling, therefore, under an abuse of discretion standard, which requires that we affirm unless the court's determination "is arbitrary, fanciful or unreasonable, or if no reasonable person would take the view adopted by the trial court." *People v. Howard*, 303 Ill. App. 3d 726, 730 (1999).

¶ 46    We note that, although inadmissible to prove negligence, evidence of subsequent remedial measures may be admissible for another proper purpose. *Herzog*, 167 Ill. 2d at 300. For example, our supreme court in *Herzog* stated that such evidence could be used to prove ownership or control of property if disputed by the defendant, to prove the feasibility of precautionary measures if disputed by the defendant, or as impeachment. *Id.* at 300-01.

¶ 47    Here, Mr. Garcia's focus is not on the *fact* that defendants removed and replaced the stairs, but on the *timing* of that remodeling project, which occurred before Mr. Garcia's expert was able to examine the stairway. Mr. Garcia insists that "it should have been left to the jury to decide the reasonableness of defendants' stated reason for removing the stairs" before his expert had an opportunity to view them.

¶ 48    It is well settled that the destruction of evidence, commonly referred to as "spoliation," may support an inference that the evidence would have been unfavorable to the party responsible for its destruction. *Midwest Trust Services, Inc. v. Catholic Health Partners Services*, 392 Ill. App. 3d 204, 209 (2009). Mr. Garcia requested IPI Civil No. 5.01 (2011), which instructs the jury that it may draw such an adverse inference. Neither of the parties offer any Illinois case law addressing the tension that can arise between the spoliation doctrine and the general prohibition against evidence of subsequent remedial measures. However, a leading evidence treatise recognizes that:

> "Excluding evidence of the subsequent repair might therefore prevent the spoliation inference—that one who destroys or spoliates evidence has committed a previous wrong—from functioning in the trial. This, in turn, operates against three key reasons for preventing spoliation: enhancing truth determination, assuring fairness, and promoting the integrity of the judicial system. In cases of intentional misconduct, therefore, the policy favoring the taking of remedial measures might conflict with the goals of the spoliation inference." 1 David P. Leonard et al., The New Wigmore: A Treatise on Evidence: Selected Rules of Limited Admissibility § 2.7, at 233 (rev. ed. 2002).

The authors of the treatise go on to note that, when determining which policy should prevail, a court must consider the probative value of the spoliation inference and whether or not evidence was destroyed as a result of intentional wrongdoing or mere negligence. *Id.*

¶ 49    Here, the trial court considered the evidence before it, including both Ms. Briskey's explanation that the reason defendants proceeded with the construction when they did was

because several water companies had recommended they tear down all of the basement walls in order to identify a seepage source and her testimony that defendants were not informed that they could not start the already-planned construction project. The trial court apparently accepted this as a reasonable explanation and decided that the policy against admitting evidence of subsequent remedial measures should prevail. We cannot say that this was an abuse of discretion or that the trial court improperly weighed the competing interests before it.

¶ 50    Mr. Garcia also proffered two alternative instructions that simply advised the jury that the stairs no longer existed and they should not hold this fact against either party. He argues that he was harmed by the trial court's refusal to offer these instructions because his expert was forced to testify to his opinions based on photographs of the stairway, rather than based on an inspection of the actual stairway, and he was prohibited from asking his expert to explain why this was so.

¶ 51    The court's refusal to give the jury these other instructions was also not an abuse of its discretion. Defense counsel did not open the door to evidence regarding the removal and replacement of the stairs by suggesting during cross-examination that Mr. Garcia's expert's opinions were somehow deficient because they were based only on photographs. Both experts testified from photographs without explanation and the court decided this was appropriate. We cannot say that conclusion was "arbitrary, fanciful or unreasonable" under the circumstances. *Howard*, 303 Ill. App. 3d at 730.

¶ 52    In addition, Mr. Garcia has not shown that he suffered "serious prejudice" from the court's refusal to give any of these instructions, which he must show to be entitled to a new trial. See *Heastie*, 226 Ill. 2d at 543. Each party's expert examined the same photographs to determine whether the stairway complied with the Building Code. And, notably, the difference in each expert's opinion was not based on any disagreement regarding the stairway's condition but, rather, on the experts' differing interpretations of the Building Code—namely, whether certain sections of the Code applied to an existing structure like defendants' home. Mr. Garcia has not pointed to any way that his expert was harmed by having to base his opinions on the photographs. The trial court did not err in granting defendants' motion *in limine* or by declining to give a jury instruction on missing evidence.

¶ 53                       C. Evidence of the Inspection Report

¶ 54    Lastly, Mr. Garcia contends that the trial court erred by not barring evidence referencing defendants' home inspection report from 2004, obtained when they were in the process of purchasing their home.

¶ 55    The trial court granted Mr. Garcia's motion *in limine* to bar this evidence in part, barring defendants from introducing the inspection report into evidence or testifying that the home inspection report did not indicate the house had any Building Code violations. But the trial court allowed defendants to testify that, in the process of buying their home, they had a home inspection and were not made aware of any defects in the home.

¶ 56    Mr. Garcia argues that he was prejudiced because both "the age and the nature of" the inspection report evidence would have been confusing and misleading to the jury and that this prejudice was compounded because, "[a]lthough defendants were allowed to testify that they were not made aware of any defects in the house when they bought it, plaintiff was not allowed to cross-examine defendants on the contents of the inspection report." The first part of this argument is unpersuasive because defendants made clear to the jury that they purchased their

home 12 years before the trial. The second argument seems to be an attempt to have it both ways. Mr. Garcia could not use the inspection report to cross examine precisely because the court granted, in significant part, his motion *in limine*. The trial court's ruling regarding evidence of the home inspection report was not an abuse of discretion.

¶ 57                                    IV. CONCLUSION
¶ 58          For the foregoing reason, we affirm the judgment of the trial court.

¶ 59          Affirmed.